



FILED
Feb 01 2024, 3:56 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 23S-CP-115

## Tonia Land, individually and on behalf of all others similarly situated,
*Appellant (Plaintiff below)*

–v–

## IU Credit Union,
*Appellee (Defendant below)*

Argued: June 29, 2023 | Decided: February 1, 2024

Appeal from the Monroe Circuit Court,
No. 53C06-2103-PL-562
The Honorable Holly M. Harvey, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 22A-CP-382

**Opinion on Rehearing by Justice Goff**

Chief Justice Rush and Justices Massa, Slaughter, and Molter concur.

**Goff, Justice.**

The essential facts of this case are as follows: When Tonia Land first became a customer of IU Credit Union (IUCU), she received an account agreement, the terms of which were "subject to change at any time." App. Vol. II, p. 43. When Land later registered for online banking, she received and accepted a second agreement, permitting IUCU to "modify the terms and conditions applicable to the Services from time to time." *Id.* at 118. In 2019, IUCU sent to Land a proposed change to these agreements (the Addendum). The terms of the Addendum would have (1) permitted either party to require arbitration for resolving disputes and (2) prohibited Land from initiating or joining a class-action lawsuit. *Id.* at 127. Unless Land exercised her "right to opt out" of this arrangement within thirty days of receiving notice, the Addendum stated, its proposed terms would become binding. *Id.* Land, while never having exercised this right, later filed a class-action complaint against IUCU. Citing the Addendum, IUCU sought to compel arbitration.

On transfer, this Court held that, while IUCU provided Land with reasonable notice of its offer to amend the original agreements, Land's subsequent silence and inaction did not—under Section 69 of the Restatement (Second) of Contracts—result in her assent to that offer. *Land v. IU Credit Union*, 218 N.E.3d 1282, 1291 (Ind. 2023).

IUCU now petitions for rehearing, claiming that the Court failed to address certain legal authorities and arguments raised on appeal and in the transfer proceedings. We hereby grant the petition to address these claims. While we affirm our original opinion in full, we leave open the possibility, in some future case, of adopting a different standard governing the offer and acceptance of unilateral contracts between businesses and consumers.

## Discussion and Decision

IUCU raises two principal claims on rehearing: (1) that the Court failed to consider "two directly applicable authorities" supporting its argument that Land "assented to arbitration by failing to opt out" and by continuing

to use her accounts, and (2) that the Court failed to consider IUCU's "alternative" argument that the agreements' modification clauses precluded the need for Land's assent to arbitration. Pet. for Reh'g at 5–6.

We address these arguments in turn.

## I. This Court did not improperly fail to address the supplemental authorities cited by IUCU.

In its notice of additional authorities, filed during the proceedings on transfer, IUCU directed this Court's attention to two legal authorities—*Cornell v. Desert Financial Credit Union*, 524 P.3d 1133 (Ariz. 2023), and Section 3 of the Restatement of Consumer Contracts (RCC). Notice at 3. These authorities, IUCU explained, specifically supported the arguments it had raised in pages 39 through 41 of its appellee's brief.[1] *Id.* IUCU now faults the Court for failing to consider these authorities in our opinion.[2] Pet. for Reh'g at 6–8. But neither *Cornell* nor Section 3 of the RCC supports the arguments IUCU had raised.

In *Cornell*, the plaintiff (a bank customer) signed an agreement which contained no arbitration clause but expressly allowed the bank to "change [the] terms and conditions" of the agreement "from time to time." 524 P.3d at 1135. The bank later updated the terms of the agreement by adding a mandatory arbitration clause, which customers could opt out of (without penalty) by giving notice within a prescribed period. *Id.* The plaintiff, while never having exercised her right to opt out, later filed a class-action claim against the bank, alleging illegal overdraft fees. *Id.* at

---

[1] "When pertinent and significant authorities come to the attention of a party after the party's brief or Petition has been filed, or after oral argument but before decision," our appellate rules allow a party to "promptly file with the Clerk a notice of those authorities setting forth the citations." Ind. Appellate Rule 48. The notice must include "a reference either to the page of the brief or to a point argued orally to which the citations pertain, with a parenthetical or a single sentence explaining the authority." *Id.*

[2] While we appreciate vigorous legal advocacy, we strongly caution IUCU's counsel against the indecorous tone of argument in their rehearing petition.

1136. The bank moved to compel arbitration. *Id.* The plaintiff responded by arguing that she never assented to the arbitration clause. *Id.* In rejecting the plaintiff's argument, the Supreme Court of Arizona adopted Section 3 of the RCC to hold that a business may modify a contract if (1) the contract's original terms contained an express modification clause; (2) the business gave, and the consumer received, reasonable notice of the modification and an opportunity to opt out with no penalty; and (3) the consumer continued the business relationship past a reasonable opt-out period. *Id.* at 1135 (citing RCC § 3 (Am. L. Inst., Tentative Draft No. 2, 2022)).

Importantly, the *Cornell* court expressly held that its ruling applied **only** to "on-going, at-will, consumer-business relationships" that "consist of the day-to-day offer and acceptance of **unilateral contracts**." *Id.* (emphasis added); *see also* RCC § 3 (specifying its applicability to a "standard contract term in a consumer contract governing an ongoing relationship"). By contrast, the *Cornell* court emphasized at length, a party may **not** modify the original terms of a **bilateral** contract—absent an express provision for unilateral modification—without an additional offer, acceptance, and consideration. 524 P.3d at 1136, 1137–38.

It would certainly be fair to characterize the relationship between Land and IUCU as an "on-going, at-will, consumer-business relationship." *See id.* at 1135. But IUCU, in that section of its appellee's brief referred to in its notice of additional authorities, disclaimed—repeatedly—its authority under the original agreements' change-in-terms clauses to "unilaterally impose the Arbitration [Addendum] on anyone." Appellee's Br. at 39. Those agreements, IUCU emphasized instead, were "**necessarily bilateral**," and the issue in this case, IUCU insisted, was "whether the parties can enter into a new contractual amendment regarding arbitration by establishing the three essential elements of any contract under standard contract law—offer, acceptance, and consideration." *Id.* at 40, 41 (emphasis

added).[3] This emphasis on the bilateral nature of the agreements aligns with IUCU's reliance on Section 69 of the Restatement (Second) of Contracts, which recognizes a party's silence as acceptance in only a few exceptional circumstances—and which we expressly based our holding on. *Id.* at 37. By contrast, Section 3 of the RCC recognizes silence by acceptance as the default rule, so long as the offeree received reasonable notice and an opportunity to opt out without penalty and continued business with the offeror.

To be sure, Section 3 of the RCC may very well offer "an effective modification procedure that fairly balances the public policies of economic efficiency and consumer protection." *See Cornell*, 524 P.3d at 1139. And we recognize the practical difficulties that businesses may face in securing affirmative consent to contract modifications from existing customers. For these reasons, we leave open the possibility of adopting Section 3 of the RCC in some future case. But, given IUCU's arguments on appeal and on transfer, neither Section 3 of the RCC nor *Cornell* apply to this case. We thus did not improperly fail to consider those authorities.

## II. This Court did not improperly fail to consider IUCU's "alternative" argument on appeal.

IUCU also faults the Court for failing to consider its "alternative" argument that it "properly applied" the agreements' modification clauses "when it added an additional forum of arbitration to an already existing term establishing a forum for resolving disputes." Pet. for Reh'g at 16. Those clauses, IUCU insists, "allowed [it] to '**unilaterally'** amend" the agreements' existing terms "without the need to establish Land's assent to

---

[3] *See also* Appellee's Br. at 40 (insisting that IUCU's "right to freedom of contract does not depend in any way on the 'change in terms' clause, nor does that clause . . . serve in any [way] to limit IUCU's or Land's freedom to enter into new agreements of any type, including arbitration agreements"); *id.* at 41 (relying on "Indiana contract law rather than the 'change in terms' provision in the Agreement to establish it entered into a new contractual amendment requiring arbitration").

the change." *Id.* (citing Appellee's Br. at 42, 47–48) (bold emphasis added, italics omitted).

We view this claim as nothing more than a variation of IUCU's first argument, signaling a labored attempt to litigate theories that IUCU expressly rejected on direct appeal.

In her appellant's brief, Land argued that the agreements' modification clauses did not permit IUCU's unilateral addition of the arbitration Addendum. Appellant's Br. at 35–41. In response, IUCU insisted that it was "**not relying on the change in terms clause** as the basis for its ability to add an arbitration provision." Appellee's Br. at 45 (emphasis added). Instead, IUCU emphasized, it was "relying on standard Indiana contract law" and the parties' "freedom" to contract "to support its ability to enter into arbitration agreements with its members." *Id.* Thus, IUCU concluded, "interpretation of the change in terms clause is **irrelevant** to the Court's ultimate decision in this case." *Id.* (emphasis added). To be sure, if the Court were to have found otherwise, IUCU asked us to "reject Land's suggested interpretation" of the change-in-terms clauses. *Id.* at 46. But ultimately, we chose the former option. *See Land*, 218 N.E.3d at 1287 n. 3 (declining to address Land's argument "that the terms of the original account Agreement did not permit the unilateral addition of the Addendum" because we "resolve[d] this case in her favor on other grounds"). So, IUCU can't now complain that the Court's opinion improperly omitted its "alternative argument" from consideration.[4]

---

[4] IUCU also argues that subsection 69(1)(a) of the Restatement imposed on Land a duty to opt out to avoid assenting to the Addendum and that the parties' "previous dealings" under subsection 69(1)(c) gave Land clear notice that continued use of the account without opting out would amount to acceptance. Pet. for Reh'g at 12–14. But IUCU raised no arguments under subsection 69(1)(a) in its appellee's brief or transfer petition, thus waiving the issue on rehearing. *See Strong v. Jackson*, 781 N.E.2d 770, 772 (Ind. Ct. App. 2003). And even if Land had "necessarily" agreed in the original contracts "to be bound by any change in terms as long as she maintained her banking relationship with IUCU," Pet. for Reh'g at 11, that arguably defeats the purpose of giving her the right to "opt out" of the Addendum. In any case, IUCU, to reiterate, repeatedly disclaimed its authority under the original change-in-terms clauses to "unilaterally impose the Arbitration Provision on anyone." Appellee's Br. at 39.

# Conclusion

We recognize the practical difficulties that businesses may face in securing affirmative consent to contract modifications from existing customers. And for that reason, we leave open the possibility of adopting, in some future case, a different standard governing the offer and acceptance of unilateral contracts between businesses and consumers. But given IUCU's emphasis on the bilateral nature of the agreements here, and its **persistent disavowal** of authority to unilaterally impose the arbitration Addendum, we find no merit in IUCU's arguments on rehearing. We thus affirm our original opinion in full.

Rush, C.J., and Massa, Slaughter, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT
Tyler B. Ewigleben
Lisa M. LaFornara
Vess A. Miller
Lynn A. Toops
Cohen & Malad, LLP
Indianapolis, Indiana

Matthew R. Gutwein
DeLaney & DeLaney LLC
Indianapolis, Indiana

John Steinkamp
John Steinkamp & Associates, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
James R. Branit
Phillip G. Litchfield
Litchfield Cavo LLP
Chicago, Illinois